**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| OSTO VARGAS, on behalf of himself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   C.A. No. _____ ) |
| NATIONAL DCP, LLC, | ) ) |
| Defendant. | ) ) ) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, Defendant National DCP, LLC ("Defendant") hereby invokes this Court's jurisdiction under 28 U.S.C. § 1332(d), and states the following grounds for removal:

1.     Plaintiff instituted this action on or about May 26, 2015 in the Superior Court for Norfolk County, Massachusetts, Civ. No. 15-00683 (hereinafter referred to as the "State Action"), naming National DCP, LLC as the Defendant.

2.     Plaintiff served Defendant with the State Action Summons and Class Action Complaint and Jury Demand ("Complaint") on June 3, 2015.  True and correct copies of the served Summons and Complaint are attached as Exhibit A.

3.     Defendant has not served any answer or responsive pleading to the Complaint, nor has it made any appearance or argument before the State Court.  This Notice has been filed with this Court within thirty (30) days of service of the Summons and Complaint in the State Action upon the Defendant.

4.     This action is removed to this Court on the grounds of diversity of citizenship pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA").

5.      The Complaint is pleaded as a putative class action in which Plaintiff seeks to represent "himself and all other drivers who worked for Defendant National DCP, LLC in Massachusetts." Compl. ¶ 1.

6.      Plaintiff is a citizen of the State of Rhode Island within the meaning of 28 U.S.C. Section 1332(d).  Compl. ¶ 3.

7.      Defendant is a Delaware corporation with its principal place of business in Duluth, Georgia.[1]

8.      Plaintiff has not alleged a specific amount in controversy in the Amended Complaint.  Accordingly, to support removal, Defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5,000,000. Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 555, 190 L. Ed. 2d 495 (2014). Without admitting that Plaintiff or the purported class could recover any damages, the amount in controversy in this action exceeds $5,000,000.00, exclusive of interest and costs, as established below.

9.      Plaintiff asserts claims for unpaid wages pursuant to Mass. Gen. L. c. 149, §§ 148 and 150, unpaid overtime pursuant to Mass. Gen. L. c. 151, §§ 1A and 1B, and breach of contract.  Compl., Counts I-III.  Specifically, Plaintiff alleges in the Complaint:

> 9.      Defendant pays drivers an hourly rate, but do {sic} not pay for all hours worked.
>
> 10.      Defendant has a practice of requiring and/or permitting drivers to clock in/scan in (via hand scan) up to approximately one half hour before the start of their shift and to work during this time, but Defendant does not compensate the drivers for this time.
>
> 11.      A typical shift starts at 2:30 AM but drivers are encouraged

---

[1] The parties are sufficiently diverse for purposes of CAFA removal if "any member of a class of plaintiffs is a citizen of a State different from *any* defendant."  28 U.S.C. § 1332(d)(2)(A).

to scan in and begin working as early as 2:00 AM.  However, for
payroll purposes, drivers are considered to begin work at 2:30 AM,
even if they have clocked in and have started working before that
time.

12.     During this uncompensated time, drivers would be at the
work site performing work, including but not limited to collective
dollies, reviewing paperwork, checking their trucks, and
performing general duties to get the truck ready to depart at 2:30
AM.

13.     National DCP has a policy of paying time-and-a-half to
drivers for hours over forty and has been contractually obligated to
pay drivers at the overtime rate for these hours.

14.     Because Defendant does not pay for all hours worked, this
results in unpaid wages at time-and-a-half in weeks during which
drivers work more than forty hours.

15.     The drivers are therefore owed unpaid wages for these
hours at the overtime rate.

Compl. ¶¶ 9-15.

10.     During the three years preceding the filing of the Complaint, there were

approximately 120 drivers employed by the Defendant in Massachusetts at any one time.

11.     During the three years preceding the filing of the Complaint, the average hourly

rate of pay for a driver in Massachusetts was approximately $26.40 per hour.

12.     Defendant delivers products to Dunkin Donuts franchises six days per week.

Approximately 74 drivers in Massachusetts are dispatched on routes to deliver products to

Dunkin' Donuts franchises throughout New England each delivery day.

13.     The amount in controversy for the three-year period preceding the filing of the

Complaint can be estimated by multiplying the total number of delivery routes for the three year

period by the overtime rate for the alleged uncompensated time (one-half hour per day).  This

calculation (74 (delivery routes/day) * 6 (days/week) * 52 (weeks/year) * 3 (three year

limitations period) * $26.40 (average hourly rate) * 1.5 (overtime premium) * .5 (alleged amount of uncompensated hours per day)) results in an alleged shortfall in compensation of $1,371,427.20.  Further, Plaintiffs requests this award of damages be trebled pursuant to Mass. Gen. L. c. 149, § 150 and c. 151, §1B.  After trebling, the amount in controversy for the three year period preceding the Complaint would be approximately $4,114,281.60.

14.     Plaintiff also brings a claim for breach of contract, presumably to seek single damages for an additional three-year period.[2]  Compl., Count III.  For the additional three-year period (from May, 2009-May, 2012), there were approximately 120 drivers employed by the Defendant in Massachusetts at any one time. The average number of routes delivered per day and the number of delivery days per week were the same.  The average hourly wage for drivers from May, 2009 to May 2012 was $24.32.  If this longer limitations period is accepted by the Court, the amount in controversy for this extended period would be approximately $1,263,375.30. (74 (delivery routes/day) * 6 (days/week) * 52 (weeks/year) * 3 (three year limitations period) * $24.32 (average hourly rate) * 1.5 (overtime premium) * .5 (alleged amount of uncompensated hours per day)).

15.     Thus, the total amount in controversy attributable to alleged damages for the full six-year purported class period would be approximately $5,377,656.90.

16.     In addition, Plaintiff seeks attorney's fees for their claims brought pursuant to Massachusetts statutory law, which may be included in determining the amount in controversy for purposes of CAFA.  Guglielmino v. McKee Foods Corp., 506 F.3d 696, 700 (9th Cir. 2007) (attorney's fees are appropriately counted toward the amount in controversy in CAFA removal actions where the underlying statute provides for an award of attorney's fees).  Courts have

---

[2] While the limitations period for private actions under the Massachusetts Wage Act and the Massachusetts Minimum Wage Act is three years, see Mass. Gen. L. c. 149, § 150 and 15, §1B, the limitations period for a claim of breach of contract in Massachusetts is six years.

approved fees equaling up to one-third the amount of the class's award in similar cases.  See, e.g., DiPonzio v. Bank of Am. Corp., 2011 U.S. Dist. LEXIS 74158, at *7 (W.D.N.Y. July 11, 2011) (finding that assuming attorneys' fees equal to 33% of potential damages is appropriate for calculation of the amount in controversy).

17.     Thus, for the purposes of determining the amount in controversy, attorney's fees in this matter can be presumed to be as high as approximately $1,792,552.30, further increasing the amount in controversy to approximately $7,170,209.20.

18.     Defendant submits this Notice without waiving any defenses to the claims asserted by Plaintiff or conceding that Plaintiff has pled claims upon which relief can be granted. To the contrary, Defendant disputes both the viability of Plaintiff's claims and his ability to recover any damages.

19.     The State Court from which this action was removed and in which this action was commenced is within this Court's district and division.

20.     This Notice of Removal will be filed promptly with the State Court, as required by 28 U.S.C. § 1446(d).   A copy of the Notice of Filing of Notice of Removal is attached herewith as Exhibit B.

21.     By copy of this document and in accordance with the Certificate of Service, the Defendant is providing notice to all Parties in this action advising of the filing of this Notice of Removal pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendant prays that the above action now pending against it in Norfolk County Superior Court of the Commonwealth of Massachusetts be removed therefrom to this Court.

Respectfully submitted,

NATIONAL DCP, LLC

By its attorneys,

/s/ Robert H. Morsilli
Robert H. Morsilli (BBO# 629999)
morsillr@jacksonlewis.com
Douglas J. Hoffman (BBO# 640472)
hoffmand@jacksonlewis.com
JACKSON LEWIS P.C.
75 Park Plaza
Boston, MA 02116
(617) 367-0025; FAX: (617) 367-2155

Dated: June 26, 2015

## CERTIFICATE OF SERVICE

This hereby certifies that on this 26th day of June, 2015, a true and accurate copy of the above document was filed with the Court via the ECF system, and served upon the attorneys listed below, via electronic mail and first-class mail, postage prepaid.

Hillary Schwab
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
Email: Hillary@fairworklaw.com

Alan D. Meyerson
LAW OFFICE OF ALAN DAVID MEYERSON
100 State Street, Suite 900
Boston, MA 02109
(617) 444-9525
Email: alan@alandavidmeyerson.com

/s/ Robert H. Morsilli
Jackson Lewis P.C.